STATE OF LOUISIANA

VERSUS

DARWIN L. BETHUNE AKA "TRENT"

NO. 21-KA-25

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 14-2923, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

November 10, 2021

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg

**<u>AFFIRMED</u>**
    **JGG**
    **SJW**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Anne M. Wallis
 Matthew R. Clauss
 Douglas W. Freese

COUNSEL FOR DEFENDANT/APPELLANT,
DARWIN L. BETHUNE AKA "TRENT"
 Cynthia K. Meyer

COUNSEL FOR DEFENDANT/APPELLANT,
DARWIN L. BETHUNE AKA "TRENT"
 In Proper Person

**GRAVOIS, J.**

Defendant, Darwin L. Bethune a/k/a "Trent," appeals his conviction, by way of a guilty plea, of manslaughter. For the reasons fully discussed below, we affirm defendant's conviction and sentence.

## PROCEDURAL HISTORY

On June 5, 2014, a Jefferson Parish Grand Jury returned a bill of indictment charging defendant, Darwin L. Bethune a/k/a "Trent," with one count of second degree murder of Joseph E. Anderson in violation of La. R.S. 14:30.1. Defendant pled not guilty at his arraignment on June 6, 2014.

The State, defense counsel, and defendant filed numerous notices, motions, demands, and responses. On October 5, 2017, a Jefferson Parish Grand Jury returned a superseding bill of indictment charging defendant with the second degree murder of Joseph E. Anderson in violation of La. R.S. 14:30.1 (count one), obstruction of justice in violation of La. R.S. 14:130.1 (count two), and inciting a felony in violation of La. R.S. 14:28 (count three). On October 6, 2017, defendant was re-arraigned on the superseding bill of indictment and again pled not guilty.

On April 16, 2018, the State amended the superseding bill of indictment to charge defendant with manslaughter as to count one and to note that a *nolle prosequi* was entered as to counts two and three. Defendant then withdrew his plea of not guilty and pled guilty to manslaughter as to count one in violation of La. R.S. 14:31.[1] The trial court thereafter sentenced defendant on the manslaughter charge to thirty years' imprisonment at hard labor.[2]

On February 15, 2019, defendant filed a *pro se* uniform application for post-conviction relief ("APCR") and a memorandum in support thereof. He

---

[1] During the same proceeding, defendant pled guilty to charges of unauthorized entry of an inhabited dwelling in violation of La. R.S. 14:62.3 (case number 14-2061) and identity theft in violation of La. R.S. 14:67.16 (case number 14-3670). The two other guilty pleas are not included in this appeal.

[2] The court ordered that this sentence and the sentences in his other two cases were to run concurrently with each other, and defendant was to receive credit for time served.

subsequently filed a *pro se* "Amendment to Supplemental Memorandum in Support of Post-Conviction Relief of Out of Time Appeal" and a *pro se* "Motion for an Evidentiary Hearing." On June 26, 2019, the trial court denied defendant's APCR, supplement, and motion for an evidentiary hearing. On February 20, 2020, defendant filed a *pro se* writ application with this Court. On April 16, 2020, this Court granted the writ in part, vacated the trial court's June 26, 2019 ruling, and remanded the matter with instructions to the trial court to hold a hearing at which it would determine whether defendant was entitled to an out-of-time appeal under the rule of *State v. Counterman*, 475 So.2d 336, 340 (La. 1985). *See State v. Bethune*, 20-KH-83 (La. App. 5 Cir. 4/16/20) (unpublished writ disposition). On July 1, 2020, the State filed a response to this Court's remand order, in which it acquiesced that defendant was entitled to an out-of-time appeal and noted that a hearing was not necessary. On September 22, 2020, the trial court granted defendant an out-of-time appeal. This appeal followed.

## FACTS

Because defendant's conviction was the result of a guilty plea, the facts underlying the crime of conviction are not fully developed in the record. The amended superseding bill of indictment provides that on or about January 1, 2014, defendant violated La. R.S. 14:31 in that he did commit manslaughter of Joseph E. Anderson.[3] Defendant pled guilty to the charge of manslaughter on April 16, 2018.

## ASSIGNMENTS OF ERROR

On appeal, defendant, through counsel, alleges the following assignment of error:

Appellant was induced to enter a plea bargain by representations made by the prosecutor and his attorney rendering the plea invalid because the plea

---

[3] Additionally, the State provided a factual basis after the trial court accepted defendant's guilty plea. The State said, "Your Honor, with respect to the homicide charge, docket number 14-2923, the defendant, Darwin Bethune, did participate in the planning of the murder of Joseph Anderson, and on the date of that murder acted as a principal to the homicide."

was not entered into freely and voluntarily.  Trial counsel was ineffective for not properly informing appellant regarding good time credits.

In a *pro se* brief filed with this Court, defendant alleges the following assignments of error:

1. Did defendant unknowingly and unintelligently plead guilty by means of material inducements by prosecutors?

2. Ineffective assistance of counsel:

   i. By not informing defendant of the consequences of the plea agreement.

   ii. Was counsel ineffective during plea negotiations and subsequent *Boykin* colloquy?

   iii. Did counsel err by conveying misinformation from prosecutors to defendant regarding eligibility for parole and diminution of sentence and current laws regarding such?

## ANALYSIS

In his counseled brief, defendant argues on appeal that his guilty plea was not entered into knowingly or voluntarily and that trial counsel was ineffective. Defendant asserts that he believed he would serve seventy-five percent of his thirty-year sentence based on statements made by the prosecutor and prior counsel. Defendant argues that there is a significant difference in the rate of good time that is allowed on his sentence and the rate of good time that he understood he would receive at the time of his guilty plea.  Defendant asserts that a contract was formed when he accepted the State's offer to plead guilty in exchange for the promise that he was eligible to earn good time credit that would result in him serving seventy-five percent of a thirty-year sentence.  Defendant states that the contract is not valid because it was based on the State's misrepresentation regarding the calculation of good time.  Defendant contends that he would not have chosen to plead guilty if he had known he would have to serve eighty-five percent of the sentence imposed.  As such, defendant asserts that the information he received

regarding parole and good time constituted a material inducement for his guilty plea which precluded him from entering a knowing and voluntary guilty plea.

Additionally, defendant contends that he was denied effective assistance of counsel. Defendant asserts that the record demonstrates that prior counsel did not attempt to correct the prosecutor when the prosecutor stated that he would only have to serve seventy-five percent of the sentence imposed. Defendant avers that he would not have pled guilty if he had been informed he would actually have to serve eighty-five percent of the sentence imposed. Defendant asks that he be allowed to withdraw his guilty plea. Alternatively, defendant requests that if this Court upholds the plea agreement and decides not to address the claim of ineffective assistance of counsel on appeal, then this Court should remand the matter so that a full evidentiary hearing on the ineffective assistance of counsel claim could be conducted.

In his *pro se* assignments of error, defendant takes issue with the same statement as his appellate counsel regarding good time. Defendant contends that he complied with the plea agreement and detrimentally relied on its provisions. He indicates that the plea agreement was reached "by means of material inducement or justifiable beliefs by declarations made by the prosecution on and off the recorded [sic]." Defendant argues that the reduction of parole time was a part of the plea agreement and was set forth in the record at the time of the plea "in plain languages from all parties involved." He contends that his plea was "induced by the reduction of his charge from 2nd Degree Murder to Manslaughter for the sole purpose of parole eligibility and the promise of reduction of time needed to serve before his early parole at 75% under the '*new laws*.'" (Emphasis as found in the original.) Defendant contends that the State knowingly misled him with the assistance of his counsel. He argues that if he had known that he was going to serve "85 percent (27 years)" before being released, he would not have pled guilty

and instead would have proceeded to trial. He states that "75 percent (17 years) is a significant difference in a defendants [sic] prospective of his own liberty interest in such parole."[4] Defendant thus claims that the plea agreement is invalid because it is unenforceable on its own terms and because he did not get what he bargained for or believed was promised to him.

As to his claim of ineffective assistance of counsel, defendant argues that he did not have effective assistance of counsel because his attorney did not inform him of the correct rate of good time he would receive on his sentence. Defendant asserts that counsel was also ineffective for allowing the State to provide misinformation and failing to act as his advocate during plea negotiations. Defendant concludes that he "should be allowed to withdraw his plea and reengage the State in lawful negotiations or proceed to trial in the alternative."

### *Claim as to whether defendant's guilty plea was freely and voluntarily given*

A plea bargain is viewed as a contract between the State and one accused of a crime. *State v. Mitchell*, 08-629 (La. App. 5 Cir. 1/13/09), 7 So.3d 744, 751, *writ denied*, 09-254 (La. 10/30/09), 21 So.3d 270. In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. *State v. Patin*, 19-157 (La. App. 5 Cir. 11/13/19), 285 So.3d 48, 53. The validity of any guilty plea depends on the circumstances of the case. *Mitchell*, *supra*. The promise of "good time" does not constitute a "lawful cause" under contract law, since the trial court does not possess the authority to authorize "good time" eligibility for a defendant. *Id*. at 752. The statute governing such credit is directed exclusively to the Department of Corrections. *Id.*

---

[4] Defendant's calculation of seventeen years is incorrect, as seventy-five percent of his thirty-year sentence is twenty-two and one-half years.

Once a defendant is sentenced, only those guilty pleas which are constitutionally infirm may be withdrawn and only by appeal or post-conviction relief. *State v. Naran*, 20-164 (La. App. 5 Cir. 12/23/20), 308 So.3d 419, 423; *State v. Joseph*, 14-762 (La. App. 5 Cir. 3/25/15), 169 So.3d 661, 664. A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the *Boykin*[5] colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain and that bargain is not kept. *Joseph*, *supra*. Although defendant has not filed a motion to withdraw his guilty plea, this does not prohibit a constitutionally infirm guilty plea from being set aside either by means of appeal or post-conviction relief. *See State v. Smith*, 08-127 (La. App. 5 Cir. 7/29/08), 993 So.2d 659, 660; *State v. McCoil*, 05-658 (La. App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124.

Dissatisfaction with a sentence or a mere change of heart or mind by the defendant as to whether he made a good bargain will not ordinarily support allowing the withdrawal of a bargained guilty plea. *State v. Johnson*, 18-294 (La. App. 5 Cir. 1/16/19), 264 So.3d 593, 597, *writ denied*, 19-259 (La. 5/28/19), 274 So.3d 561. Moreover, where a defendant's misunderstanding of the plea bargain is not induced by or attributed to representations made by the district attorney or the trial court, there are no grounds for withdrawal of the plea. In the absence of fraud, intimidation, or incompetency of counsel, a guilty plea is not made less voluntary or informed by the considered advice of counsel. *Joseph*, 169 So.3d at 664. A guilty plea also will not be set aside upon a defendant's unfulfilled expectation of gaining release as early as possible. *Id*.

In the present case, defendant signed an "Acknowledgement and Waiver of Constitutional Rights – Guilty Plea" form on April 16, 2018. Defendant's initials

---

[5] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

appear next to each right listed. These rights include an acknowledgement that defendant's guilty plea is knowing, intelligent, free, and voluntary; that no promises or threats were made to encourage him to plead guilty; that he was satisfied with the way his attorney handled the case; and that he understood the maximum sentences which could have been imposed on the three counts he pled guilty to. The acknowledgement and waiver form further contains defendant's initials next to a statement that he understood what his sentences would be: "On manslaughter, 30 years in the Dept. of Corrections at hard labor. Unauthorized Entry of an Inhabited Dwelling, 6 years in the Dept. of Corrections; Identity Theft, five years in the Dept. of Corrections. These sentences are to run concurrent with each other and the defendant is to receive full credit for time served." Defendant, defense counsel, and the trial judge each signed at the end of the acknowledgment and waiver form.

At the beginning of the hearing on April 16, 2018, defense counsel indicated that defendant would be pleading guilty and that he would specifically plead guilty to manslaughter. She further noted that she had "gone over" the waiver of constitutional rights form with defendant. Thereafter, defendant was sworn in, and the trial court engaged defendant in a guilty plea colloquy. Specifically, defendant affirmatively indicated that he had an opportunity to speak with his counsel regarding the plea. When asked by the trial court if he pled guilty because he was guilty, defendant again answered affirmatively. Defendant acknowledged that his highest level of education was college and that it was his initials and signature that were on "the Boykin."

Further, defendant acknowledged that he understood the nature of the crimes and that if his plea of guilty was accepted, there would not be a trial of any kind. Defendant indicated that he was not under the influence of any alcohol or drugs at that time and that he did not have a mental or physical impairment affecting his

ability to enter the guilty plea. He indicated that he was able to read, write, and understand the English language. The transcript indicates that defendant did not respond when asked if he understood that he was pleading guilty to the crime of manslaughter in violation of La. R.S. 14:31, which occurred on January 1, 2014.

Defendant affirmatively indicated that he understood that he had a right to a trial by jury, the right to be presumed innocent until the district attorney proved his guilt beyond a reasonable doubt, the right to confront his accusers and cross-examine witnesses called to testify against him, the right to remain silent and not be compelled to incriminate himself, the right to an appellate review of an adverse verdict at trial, and the right to assistance of a lawyer. Defendant affirmatively responded when asked if he understood that by entering a guilty plea he was waiving and giving up those rights. The trial court asked defendant if he understood that by pleading guilty he was authorizing the court to impose up to the maximum sentence provided by law without a trial. Defendant again answered affirmatively. Defendant acknowledged that he understood he could be habitually billed in the future and that his attorney had explained the habitual offender law to him.

Defendant acknowledged that pleading guilty was knowing, intelligent, free, and voluntary on his part and that no promises or threats were made to encourage him to enter a guilty plea. The trial court asked defendant if he was satisfied with the way his attorney handled his case, and defendant answered affirmatively. He acknowledged that he understood the maximum sentence that may be imposed for manslaughter is forty years and the maximum sentences on the charges in the other two cases. The trial court asked if defendant understood that his sentence as to manslaughter would be thirty years' imprisonment at hard labor, that his sentences in all three cases were to run concurrently with each other, that he would receive full credit for time served, and would also be "assessed the sum of $45 in

accordance with Louisiana Revised Statute 15:168."[6] Defendant stated that he understood all possible legal consequences of pleading guilty explained to him by his attorney and the court and that he wished to plead guilty. The trial court asked defendant if he understood his rights and if there were no further questions. Defendant responded affirmatively. The trial court then advised defendant of the time period in which to seek post-conviction relief. Defendant's guilty plea was then accepted by the court as knowingly, intelligently, freely, and voluntarily made.

After the trial court accepted defendant's guilty plea and the State provided a brief factual basis as to the counts in each case, the prosecutor stated the following:

> Your Honor, present today are Joseph Anderson's parents, his brother, and his sister. Ms. Africk and I had an opportunity to meet with them at length to discuss the plea in this case and they were in agreement with us that the plea offer would be made.
>
> A statement that I want to make now, and I believe I'm going to need to make in every homicide case or other serious crime where we are in a plea agreement like this, is in light of the changes made in the law by our Legislature, and the fact that we simply can't predict what the Legislature would do for whatever its reason may be, you know, they were informed that he had good time parole in connection with a crime of violence which was reduced in our last Legislative sentence from 85 percent to 75 percent. And we're doing that, (1) Because we have to make these disclosures to a victim's family; and (2) We simply don't know what the Legislature will do going forward. We have absolutely no control over that. Now, it is therefore, we believe, incumbent upon us to share that information with all victims on a moving forward basis and we've done so in this particular case.

After defendant waived delays, the trial court sentenced him as to the offense of manslaughter to thirty years' imprisonment to be served at hard labor. The court ordered the sentences in each case to run concurrently with each other and that defendant was to receive credit for time served. The court further recommended any self-help programs that may be available to defendant.

---

[6] On the Acknowledgement and Waiver of Constitutional Rights – Guilty Plea form, defendant initialed next to a line indicating that he understood he would be assessed the sum of $45 in accordance with La. R.S. 15:168. During the guilty plea colloquy, the trial court asked defendant this same question, and defendant answered affirmatively. However, the transcript, sentencing minute entry, and uniform commitment order do not reflect imposition of such a fee.

In *Joseph*, 169 So.3d 661, the defendant on appeal challenged the trial court's denial of his motion to withdraw his guilty plea for possession of cocaine. When the defendant appeared for sentencing, he made an oral motion to withdraw his guilty plea alleging that his guilty plea was not knowingly and intelligently made because his counsel provided erroneous advice about the length of time he would actually serve in prison. *Id*. at 663. Specifically, his counsel advised him that a plea with a thirty-month sentence "would result in him doing 40 percent of that sentence under the good time statutes." Counsel explained to the defendant that he would "essentially have to do twelve months" and that since he had already served about five and a half months, he would only need to serve an additional six and a half months. In arguing his motion, defense counsel advised the trial court that he did not realize until that morning that the defendant did not qualify for good time diminution of sentence because of the habitual offender bill and that had the defendant known he had to serve thirty months, he never would have agreed to plead guilty. The trial court then denied the motion, finding that the defendant's guilty plea was knowingly and intelligently entered. *Id*.

On appeal in *Joseph*, this Court determined that the trial court did not err in its denial of the motion. Specifically, this Court noted that the record reflected that the trial court conducted a lengthy colloquy with the defendant. *Id*. at 666. The trial court advised the defendant of his rights as well as the consequences of his guilty plea and explained the possible sentencing range to the defendant. This Court stated that the trial court further advised the defendant that pleading guilty to a felony charge exposed him to greater penalties as a habitual offender in the event that he would plead guilty or be found guilty of a subsequent felony in the future. The trial court continued by informing the defendant that upon acceptance of his plea, he would be sentenced to thirty months in the Department of Corrections, with credit for time served, and would also be ordered to pay a public defender fee.

The trial court specified that the State planned to only double bill him and to ask for a sentence of thirty months on the habitual offender bill. *Id.*

In *Joseph*, this Court stated that throughout the proceedings, the defendant indicated that he understood his sentencing exposure in connection with his guilty plea. *Id.* at 666. In addition, the defendant and his attorney signed the plea form that set forth that upon acceptance of his guilty plea, he would be sentenced to thirty months with the Department of Corrections. This Court noted that at no time did the trial court or the State indicate to the defendant that he would only have to serve forty percent of his sentence and that at no point during the lengthy colloquy did the defendant ask the trial court whether he would be eligible for good time credit if he pled guilty. *Id.* This Court concluded that the fact that the defendant thought he would be released earlier did not provide a basis for withdrawal of his guilty plea. *Id.* at 667.

In this case, upon review, we find that defendant's plea was entered into freely and voluntarily. The record does not show that defendant was promised good time eligibility as part of his plea agreement or that the State violated the terms of the plea agreement. Defendant does not cite to anything in the record that indicates good time eligibility was part of the plea agreement, nor was there any mention of good time in the guilty plea documents or during the *Boykin* colloquy. The Acknowledgement and Waiver of Constitutional Rights – Guilty Plea form signed by defendant does not contain any language regarding good time. Further, the trial court engaged in a lengthy colloquy with defendant prior to accepting defendant's guilty plea. The record does not reflect that defendant or defense counsel made any statement or asked any questions regarding good time or the sentence to be imposed. The record further does not reflect that the trial court mentioned good time parole at any time during the colloquy.

Notably, the prosecutor's comments regarding good time were made after defendant had pled guilty and after the trial court had already accepted his plea. Additionally, the transcript clearly indicates that the prosecutor's statements in question were directed towards the victim's family and reflect that the prosecutor was unsure what the legislature would do regarding good time parole. Rather than making a promise, the State was providing to the victim's family that it could not predict future legislative decisions about good time. The prosecutor began the statement by noting that the victim's family was present in court and that they had agreed to the plea offer. Then, the prosecutor indicated that the legislature can and has altered the computation of good time. The prosecutor explicitly stated that such a disclosure needed to be made to the victim's family. The prosecutor ended this remark by reiterating that it was sharing that information with the victim's family. As such, we find that the only statement made on the record before us regarding good time was actually directed to the victim's family and not an advisal or agreement of any kind to defendant prior to him entering his guilty plea. In defendant's *pro se* brief, he alludes to material inducements on and off the record. However, he fails to offer any details or support as to what may have been stated off the record. Additionally, defendant does not provide any citations to the record to demonstrate any material inducements, but rather just vaguely asserts that the record clearly supports his position. Thus, we find that there is nothing in the record to support defendant's assertion that he received information or promises from the prosecution regarding good time. As such, we find that defendant's guilty plea was entered into freely and voluntarily.

### *Claim as to whether defendant received ineffective assistance of counsel*

As to defendant's claims of ineffective assistance of counsel, a defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of

1974. *State v. Karim*, 19-133 (La. App. 5 Cir. 9/9/20), 302 So.3d 1200, 1204, *writ denied*, 20-1185 (La. 1/12/21), 308 So.3d 713; *State v. Francois*, 13-616 (La. App. 5 Cir. 1/31/14), 134 So.3d 42, 58, *writ denied*, 14-431 (La. 9/26/14), 149 So.3d 261. Under the standard for ineffective assistance of counsel set forth in *Strickland*, a conviction must be reversed if the defendant proves: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *Karim*, *supra*.

When a defendant claims that counsel's ineffective assistance rendered a guilty plea invalid, the *Strickland* analysis under the first deficiency prong remains the same, whereas under the second prejudice prong, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *State v. Stiller*, 16-659 (La. App. 5 Cir. 7/26/17), 225 So.3d 1154, 1157 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)).

To prevail, the accused must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Rivas*, 17-615 (La. App. 5 Cir. 7/31/18), 251 So.3d 1228, 1233 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). Any inquiry into the effectiveness of counsel must be specific to the facts of the case and must take into consideration the counsel's perspective at the time. *Id.* Furthermore, "[g]eneral statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel." *State v. Fisher*, 19-488 (La. App. 5 Cir. 6/24/20), 299 So.3d 1238, 1247 (citing *State v. Celestine*, 11-1403 (La. App. 3 Cir. 5/30/12), 91 So.3d 573, 579).

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district

court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Ferrera*, 16-243 (La. App. 5 Cir. 12/14/16), 208 So.3d 1060, 1066-67. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id*. at 1067. If, on the other hand, the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.Cr.P. arts. 924-930.8. *Id.*

Upon review, we find that the current record before us is insufficient to determine if defendant received ineffective assistance of counsel. Thus, we find that defendant's allegations of ineffective assistance of counsel cannot be reviewed here and rather should be raised in an application for post-conviction relief in the trial court where a full evidentiary hearing can be conducted, if warranted under the post-conviction relief statutory procedure, and defendant can present evidence to support his allegations if an evidentiary hearing is conducted. *See State v. Hernandez*, 18-3 (La. App. 5 Cir. 6/6/18), 250 So.3d 356.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The review reveals no errors patent in this case.

## CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 10, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

*Curtis B. Pursell*

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-KA-25

## E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)          MATTHEW R. CLAUSS (APPELLEE)          THOMAS J. BUTLER (APPELLEE)
CYNTHIA K. MEYER (APPELLANT)

## MAILED
DARWIN L. BETHUNE #700630           HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)                          (APPELLEE)
ALLEN CORRECTIONAL CENTER            DISTRICT ATTORNEY
3751 LAUDERDALE WOODYARD ROAD        DOUGLAS W. FREESE (APPELLEE)
KINDER, LA 70648                     ASSISTANT DISTRICT ATTORNEY
                                     TWENTY-FOURTH JUDICIAL DISTRICT
                                     200 DERBIGNY STREET
                                     GRETNA, LA 70053